# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

PAMELA VALIN; JAMES VALIN,

        Plaintiffs,

vs.

NATIONSTAR MORTGAGE, LLC, *et al.*,

        Defendants.

Case No.: 2:19-cv-01785-GMN-DJA

**ORDER**

Pending before the Court is the Motion for Temporary Restraining Order and Preliminary Injunction, (ECF Nos. 7, 8), filed by Plaintiffs Pamela Valin and James Valin ("Plaintiffs"). Defendants Nationstar Mortgage LLC and U.S. Bank National Association (as Trustee Successor in Interest to Wachovia Bank, National Association, as Trustee for GSR Mortgage Loan Trust 2004-11, Mortgage Pass-Through Certificates, Series 2004-11) (collectively "Defendants") filed a Response, (ECF No. 11); and Plaintiffs filed a Reply, (ECF No. 12). For the reasons discussed below, the Court **DENIES** Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.[1]

**I.    BACKGROUND**

This case arises from Plaintiffs' payment obligations for a loan to purchase real property (the "Mortgage") located at 16 Via Ravello, Henderson, Nevada 89011 (the "Property"). (First Am. Compl. ("FAC") ¶¶ 7–8, ECF No. 1-1). Plaintiffs received the Mortgage from Central Pacific Mortgage Company, who secured the Mortgage against the Property by recording a Deed of Trust. (*Id.* ¶ 9). Countrywide Mortgage later purchased the Mortgage; and Bank of America ("BOA") purchased Countrywide Mortgage. (*Id.* ¶ 10).

---

[1] Also pending before the Court is Defendants' Motion to Dismiss, (ECF No. 10), which Defendants filed on October 17, 2019. At the time of this Order, that Motion has not been fully briefed by the parties. The Court will accordingly defer its decision on the merits of Defendants' Motion to Dismiss until it becomes ripe.

According to the First Amended Complaint, Plaintiffs last made a payment for the Mortgage on May 1, 2009, which BOA deemed late on June 1, 2009. (*Id.* ¶¶ 11–12). BOA consequently recorded a Notice of Default and Election to Sell the Property on September 8, 2009 ("First Notice of Default"). The First Notice of Default declared that it accelerated the full, outstanding amount still owed for the Mortgage. (First Not. Default, Ex. 4 to Mot. TRO, ECF No. 7-1). However, on March 25, 2010, BOA recorded a Notice of Rescission ("First Rescission"), which rescinded the First Notice of Default. (First Rescission at 51 of 59, Ex. 8 to Mot. TRO, ECF No. 7-1).

In 2013, BOA substituted its role as servicer of Plaintiffs' Mortgage with Nationstar. (FAC ¶ 16). Because Plaintiffs were still delinquent on their Mortgage payments, Nationstar recorded a Notice of Default and Election to Sell the Property on March 16, 2016 ("Second Notice of Default"), which again accelerated the outstanding amount owed with the Mortgage. (Sec. Not. Default, Ex. 5 to Mot. TRO, ECF No. 7-1). Like BOA, Nationstar rescinded the Second Notice of Default with a Notice of Rescission recorded twice: on November 17, 2016, and January 9, 2017 ("Second Rescission"). (Sec. Rescission at 53 of 59, Ex. 8 to Mot. TRO, ECF No. 7-1); (Sec. Rescission, Ex. I to Resp., ECF No. 11-9). Yet, on January 9, 2017, Nationstar recorded another Notice of Default and Election to Sell the Property ("Third Notice of Default"); and this Third Notice of Default has not been rescinded. (Third Not. Default, Ex. 6 to Mot. TRO, ECF No. 7-1).

On October 3, 2019, Plaintiffs filed a Complaint against Defendants in the District Court for Clark County, Nevada, asserting three causes of action: (1) quiet title; (2) declaratory judgment; and (3) injunctive relief. (Compl. ¶¶ 25–42, ECF No. 1-1). Plaintiff amended that Complaint on October 9, 2019, though still asserting the same three causes of action as the original. (First Am. Compl. ("FAC'), ECF No. 1-1). On October 11, 2019, Plaintiffs filed an *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction with the Clark

County Court to enjoin a foreclosure sale on the Property scheduled for October 22, 2019 (a sale authorized by the Third Notice of Default). (*Ex Parte* Mot. TRO, ECF No. 1-1). Three days after Plaintiffs filed their *Ex Parte* Motion, Defendants removed the case to this Court and thereby negated the restraining order and injunction process in the Clark County Court. (Pet. Removal, ECF No. 1); (Decl. Erik W. Fox ¶¶ 5, 7, Mot. TRO, ECF No. 7).

On October 15, 2019, Plaintiffs re-filed their Motion for Temporary Restraining Order and Preliminary Injunction with this Court, and the Court set an expedited briefing schedule. (Min. Order, ECF No. 9). In their Reply filed on October 21, 2019, Plaintiffs advise the Court of the foreclosure sale's continuance to November 26, 2019. (Reply 2:12–13, ECF No. 12).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001). Furthermore, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22.

The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l. Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). "The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil*, § 2949 at 471 (1973)).

### III. DISCUSSION

Plaintiffs contend that each of the four *Winter* factors weigh in their favor and warrant enjoining the foreclosure sale on the Property. The Court's below discussion addresses each factor in turn.

**A. Likelihood of Success on the Merits**

Plaintiffs argue that Nevada Revised Statute ("NRS") 106.240 creates a conclusive presumption that a lien on real property becomes satisfied and discharged ten years after the debt becomes wholly due. (Mot. TRO 6:5–21) (citing, among other authority, *Bank of Am.,*

*N.A. v. Giavanna Homeowners Ass'n*, No. 2:18-cv-00288-RFB-VCF, 2019 WL 1407411, at *4 (D. Nev. Mar. 28, 2019)). Plaintiffs thus contend that their Mortgage should be deemed satisfied and discharged under NRS 106.240 because more than ten years passed since BOA recorded the First Notice of Default on September 8, 2009, which accelerated the outstanding amount on the Mortgage and made it wholly due and owing on that date. (Mot. TRO 5:3–4, 13:21–14:10). Plaintiffs' success in each of their claims centers on this contention. (FAC ¶¶ 22, 26, 33–35, 39).

In response, Defendants argue that even if Plaintiffs' Mortgage were accelerated as of September 8, 2009, that Mortgage became decelerated through the Notices of Rescission recorded in 2016 and 2017. (Resp. 4:12–23). According to Defendants, those Rescissions were recorded less than ten years after the First Notice of Default. And since the Rescissions reinstated the original loan maturity date of 2034, the Mortgage would not be "wholly due" until that maturity date. (*Id.*).

Plaintiffs' contention that the First Notice of Default accelerated the whole Mortgage on September 8, 2009, appears correct based on the records provided at this stage. For deceleration of that loan to have occurred, it must have been done expressly: through a "clear and unequivocal act memorializing that deceleration." *Cadle Co. II v. Fountain*, 281 P.3d 1158 at *2 (Nev. 2009) (unpublished).

The recorded First and Second Rescissions appear to provide the express action discussed in *Cadle Co. II*. The relevant language of the First Rescission states:

> "[Recontrust], acting as an agent for the Beneficiary does hereby rescind, cancel and withdraw the Notice of Default and Election to Sell . . . however, that this rescission shall not be construed as waiving, curing, extending to, or affecting any default, either past, present or future, under such Deed of Trust, or as impairing any right or remedy thereunder, and it is and shall be deemed to be, only an election without prejudice not to cause a sale to be made pursuant to such Notice of Default and Election to Sell, and it shall not in any way alter or change any of the rights remedies or privileges secured to Beneficiary and/or Trustee

> under such Deed of Trust, nor modify, nor alter in any respect any of the terms, covenants, conditions or obligations therein contained.

(First Rescission, Ex. C to Resp, ECF No. 11-3). The Second Rescission largely mirrors the First, but adds: "and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given." (Second Rescission, Ex. H to Resp., ECF No. 11-8); (Second Rescission, Ex. I to Resp., ECF No. 11-9).

The Rescissions' cancellation of the Notices of Sale and reinstatement of the original Mortgage terms supports deceleration of the outstanding Mortgage—which would make it wholly due and owing in 2034, not 2019 as argued by Plaintiffs. *Cf. Andra R Miller Designs LLC v. US Bank NA*, 418 P.3d 1038, 1045 (Az. Ct. App. 2018) (requiring an affirmative act to decelerate a debt, like Nevada, and finding such an affirmative act to occur through recording a "Cancellation of Notice of Sale, of Declaration of Default and Demand for Sale, and of Notice of Breach and Election to Cause Sale," which included similar language as the Rescissions here about revoking the Notice of Sale and reinstating the initial terms of the loan obligation). It bears noting that Defendants do not provide binding legal authority clearly stating that a lender can unilaterally rescind the acceleration through the actions taken in this case. Nevertheless, *Cadle Co. II v. Fountain*, 281 P.3d 1158 (Nev. 2009), supports this unilateral process, and Plaintiffs do not provide authority showing otherwise. Plaintiffs point to Sections 19 and 22 of the Deed of Trust to claim that only the "Borrower" has the right to decelerate. (Reply 5:3–14, ECF No. 12). However, these Sections do not show that *only* the Borrower can decelerate; they simply create a right for the Borrower to decelerate after acceleration and the process to do so. Plaintiffs do not identify a provision in the Deed of Trust that prevents the lender from decelerating obligations after acceleration. Nor do they claim that a lender's unilateral deceleration would breach a term (implied or express) within the Deed of Trust.

Consequently, the evidence at this stage lends support for the Mortgage becoming decelerated as of November 2016 and not becoming accelerated again until Defendants filed the third Notice of Default to restart the foreclosure process. (Third Notice of Default, Ex. J to Resp., ECF No. 11-10).[2] Because the Rescissions were recorded within ten years of the First Notice of Default, and because the Third Notice of Default was recorded within ten years of Plaintiffs' suit, Plaintiffs do not enjoy a likelihood of success on their claim that the Mortgage should be deemed terminated under NRS 106.240. The first *Winter* factor thus does not weigh in favor of Plaintiffs' requested preliminary injunction.

### B. Irreparable Harm

Plaintiffs claim they will suffer irreparable injury without injunctive relief because they will lose their interest in the Property. (Mot. TRO 13:8–10). Courts typically recognize that losing one's home through foreclosure is an irreparable harm because of the unique nature of real property, for which a "legal remedy—i.e., damages—is inadequate." *See, e.g.*, *Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988); *Viets v. Wachovia Mortg., FSB*, No. 2:11-cv-00169-GMN, 2013 WL 3877587, at *3 (D. Nev. July 25, 2013). Nevertheless, this second *Winter* factor does not decisively weigh in Plaintiffs' favor. Plaintiffs do not allege that the Property is their primary residence, rather than held for a commercial or investment purpose. *Cf. Geneva Ltd. Partners v. Kemp*, 779 F. Supp. 1237, 1241 (N.D. Cal. 1990); *M&T Bank v. SFR Investments Pool 1, LLC*, No. 2:17-cv-1867-JCM-CWH, 2019 WL 3577645, at *4 (D. Nev. Aug. 6, 2019). Likewise, Plaintiffs state that their last payment on the Mortgage occurred on May 1, 2009. (FAC ¶ 11). At least one court in this

---

[2] While the process of starting, stopping, and re-starting acceleration through the Notices may seem to be a method of evading NRS 106.240, the Nevada Supreme Court explained in *Holt v. Reg'l Tr. Servs. Corp.*, 266 P.3d 602 (Nev. 2011), that "[r]escission and renotice are not . . . without lender consequences." *Id.* at 606. That is, "taking this path resets the right-to-cure and other time periods provided by law for the debtor's protection, causing delay and additional losses, to the extent the property is financially under water, at the lender's expense." *Id.* Similarly, it can reinstate certain rights to mediation for debtors as well as the benefits that come with this out-of-court forum. *Id.*; *Sherbino v. Select Portfolio Servicing, Inc.*, 381 P.3d 662 (Nev. 2012) (unpublished).

District has rejected the contention of irreparable injury from the loss of real property when that loss was admittedly due to the plaintiff's failure to make required payments. *See Rosenberger v. Wells Fargo Home Mortg.*, No. 2:15-cv-2107-JCM-VCF, 2015 WL 8160360, at *3 (D. Nev. Dec. 7, 2015). As a result, Plaintiffs have not demonstrated that their likely, impending harm weighs in favor of Plaintiffs' requested injunction.

### C. Balance of Hardships

Just as the first two *Winter* factors do not weigh in favor of a preliminary injunction, neither does the third factor concerning a balance of hardships. The Property and corresponding foreclosure attempts have been the center of litigation in this District and Nevada state court for several years. In those other cases, Plaintiffs have unsuccessfully attempted to quiet title in their favor or otherwise invalidate Defendants' title interest and attempted foreclosures. *See* Order Granting Summary Judgment, *Valin v. Nationstar Mortgage, LLC et al.*, 2:18-cv-01109-JAD-BNW (D. Nev Sept. 3, 2019). This present case differs from the others since it uniquely concerns loan discharge under Nevada Revised Statute 106.240. Nevertheless, those other courts have recognized how Plaintiffs have not made any payments on the Mortgage in roughly ten years; and that recognition applies with equal weight here. *Id.* at 7. That said, the balance of hardships does not favor Plaintiffs—who have held possession of the Property without payment for a decade and now claim the Mortgage should be discharged due to a time-limit even as Defendants have continuously litigated the validity of their title interest to properly foreclose in recent years.

### D. Public Interest

The final *Winter* factor of public interest does not favor Plaintiffs. Plaintiffs claim that "clearing stale obligations" under NRS 106.240 is in the public's benefit. (Mot. TRO 15:4–7). However, Plaintiffs similarly recognize that they still failed to make payments on the Mortgage after a recent court ruling finding that their title interest is encumbered and Defendants'

attempted foreclosures valid. *See* Order Granting Summary Judgment, *Valin v. Nationstar Mortgage, LLC et al.*, 2:18-cv-01109-JAD-BNW (D. Nev Sept. 3, 2019). The public's interest in removing stale loan obligations thus does not favor Plaintiffs because Defendants have shown what would have been timely attempts to properly foreclose and collect on debt obligations but for time-intensive litigation. Though Defendants' time spent in litigation does not appear to toll the applicability of NRS 106.240, it serves as a minor equitable consideration at this preliminary stage.

Altogether, the Court denies Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction because Plaintiffs have not demonstrated that the *Winter* factors favor their requested relief.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, (ECF Nos. 7, 8), is **DENIED**.

**DATED** this __4__ day of November, 2019.

_____
Gloria M. Navarro, District Judge
United States District Court