UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PAMELA VALIN; JAMES VALIN,                )
                                          )
            Plaintiffs,                )   Case No.: 2:19-cv-01785-GMN-DJA
  vs.                                     )
                                          )   **ORDER**
NATIONSTAR MORTGAGE, LLC, *et al.*,       )
                                          )
            Defendants.                )

Pending before the Court is the Motion to Dismiss, (ECF No. 10), filed by Defendants Nationstar Mortgage, LLC and U.S. Bank National Association ("Defendants"). Plaintiffs Pamela Valin and James Valin ("Plaintiffs") filed a Response, (ECF No. 15), and Defendants filed a Reply, (ECF No. 18). Also pending before the Court is Plaintiffs' Objection/Appeal, (ECF No. 36), concerning Magistrate Judge Daniel J. Albregts's Order, (ECF No. 35), granting a stay of discovery, to which Defendants filed a Response, (ECF No. 37). For the reasons stated below, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES as moot** Plaintiff's Objection/Appeal to the stay of discovery.

I.    **BACKGROUND**

This case arises from Plaintiffs' payment obligations for a loan to purchase real property (the "Mortgage") located at 16 Via Ravello, Henderson, Nevada 89011 (the "Property"). (First Am. Compl. ("FAC") ¶¶ 7–8, ECF No. 1-1). Plaintiffs received the Mortgage from Central Pacific Mortgage Company, who secured the Mortgage against the Property by recording a Deed of Trust. (*Id.* ¶ 9). Later, Countrywide Mortgage purchased the Mortgage, and then Bank of America ("BANA") merged with Countrywide Mortgage. (*Id.* ¶ 10).

According to the First Amended Complaint, Plaintiffs last made a payment for the Mortgage on May 1, 2009, which BANA deemed late on June 1, 2009. (*Id.* ¶¶ 11–12). BANA

consequently recorded a Notice of Default and Election to Sell the Property on September 8, 2009 ("First Notice of Default"). (*Id.* ¶ 13).  The First Notice of Default declared that it accelerated the full, outstanding amount still owed for the Mortgage. (First Not. Default at 2, Ex. B to Mot. Dismiss, ECF No. 10-2).  However, on March 25, 2010, BANA recorded a Notice of Rescission ("First Rescission"), which rescinded the First Notice of Default. (First Rescission, Ex. C to Mot. Dismiss, ECF No. 10-3); (FAC ¶¶ 13–15).

In 2013, BANA substituted its role as servicer of Plaintiffs' Mortgage with Nationstar. (FAC ¶ 16).  Because Plaintiffs were still delinquent on their Mortgage payments, Nationstar recorded a Notice of Default and Election to Sell the Property on March 31, 2016 ("Second Notice of Default"), which again accelerated the outstanding amount owed with the Mortgage. (Sec. Not. Default, Ex. G to Mot. Dismiss, ECF No. 10-7); (FAC ¶ 17).  Like BANA, Nationstar rescinded the Second Notice of Default with a Notice of Rescission recorded twice: on November 17, 2016, and January 9, 2017 (collectively, "Second Rescission"). (Sec. Rescission at, Ex. H to Mot. Dismiss, ECF No. 10-8); (Sec. Rescission, Ex. I to Mot. Dismiss., ECF No. 10-9); (FAC ¶ 18).  However, on January 9, 2017, Nationstar recorded another Notice of Default and Election to Sell the Property ("Third Notice of Default"), and this Third Notice of Default has not been rescinded. (Third Not. Default, Ex. J to Mot. Dismiss, ECF No. 10-10); (FAC ¶ 19).

On October 3, 2019, Plaintiffs filed a Complaint against Defendants in the District Court for Clark County, Nevada, asserting three causes of action: (1) quiet title; (2) declaratory judgment; and (3) injunctive relief. (Compl. ¶¶ 25–42, ECF No. 1-1).  Plaintiffs amended that Complaint on October 9, 2019, though still asserting the same three causes of action as the original. (First Am. Compl. ("FAC'), ECF No. 1-1).

Two days after filing the Amended Complaint, Plaintiffs filed an *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction with the Clark County Court to enjoin

1  a foreclosure sale on the Property scheduled for October 22, 2019—a sale based on foreclosure
2  proceedings initiated with Nationstar's Third Notice of Default. (*Ex Parte* Mot. TRO, ECF No.
3  1-1).  But three days after Plaintiffs filed their *Ex Parte* Motion, Defendants removed the case
4  to this Court and thereby negated the restraining order and injunction process in the Clark
5  County Court. (Pet. Removal, ECF No. 1).

6       On October 15, 2019, Plaintiffs re-filed their Motion for Temporary Restraining Order
7  and Preliminary Injunction with this Court, and the Court set an expedited briefing schedule.
8  (Min. Order, ECF No. 9).  Defendants filed both an opposition to that Motion and a Motion to
9  dismiss the case.  The Court ultimately denied Plaintiffs' request for a temporary restraining
10 order, though Defendants' Motion to Dismiss remained pending. (*See* Order, ECF No. 17).

11 **II.**     **LEGAL STANDARD**

12      Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action
13 that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp.*
14 *Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule
15 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not
16 give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.
17 *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the
18 complaint is sufficient to state a claim, the Court will take all material allegations as true and
19 construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792
20 F.2d 896, 898 (9th Cir. 1986).

21      The Court, however, is not required to accept as true allegations that are merely
22 conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*
23 *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action
24 with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a
25

violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

A court may also dismiss a complaint pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with Federal Rule of Civil Procedure 8(a). *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1129 (9th Cir.2008). Rule 8(a)(2) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Prolix, confusing complaints" should be dismissed because "they impose unfair burdens on litigants and judges." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss becomes a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001)[1].

---

[1] Plaintiffs' Amended Complaint references each of the recorded documents identified in the Background of this Order. The Court accordingly can rely on these documents without converting Defendants' Motion to Dismiss into one for summary judgment.

## III. DISCUSSION

Plaintiffs' claims arise from Nevada Revised Statute ("NRS") 106.240, which creates a "conclusive presumption that a lien on real property is extinguished" ten years after the debt became "wholly due." Nev. Rev. Stat. § 106.240; *Pro-Max Corp. v. Feenstra*, 16 P.3d 1074, 1077 (Nev. 2001); (FAC ¶¶ 25–42). According to Plaintiffs, the Court can deem the Mortgage on the Property satisfied and discharged under NRS 106.240 because more than ten years passed since the recording of the First Notice of Default on September 8, 2009, which accelerated the outstanding amount on the Mortgage and made it wholly due on that date. (*Id.* ¶¶ 21–42).

Defendants move to dismiss Plaintiff's claims by arguing that NRS 106.240 does not apply under the facts here and, thus, cannot support Plaintiffs' request for quiet title, declaratory relief, or injunctive relief. That is, Defendants first argue NRS 106.240 cannot prevent them from foreclosing on the Property through a non-judicial sale based on the Mortgage, because NRS 106.240 is a statute of repose that applies only to judicial actions. (Mot. Dismiss 5:21–6:11). Defendants next argue that the Mortgage's terms dictate when the debt becomes "wholly due" for purposes of NRS 106.240, and acceleration pursuant to a Notice of Default has no effect. (*Id.* 6:12–27). Consequently, according to Defendant, the Mortgage has yet to become "wholly due" for purposes of NRS 106.240 because the Mortgage's own terms state that the loan does not mature until June 1, 2034. (*Id.*). Defendants' third argument is that even if Plaintiffs' Mortgage were accelerated by the September 8, 2009 Notice of Default to make the debt "wholly due" at that point, the recorded Notices of Rescission withdrew the 2009 Notice of Default, thereby decelerating the debt and reinstating the Mortgage's original 2034 maturity date. (*Id.* 7:2–28). And because deceleration occurred less than ten years after acceleration, Defendants assert that the Mortgage had never been "wholly due" for the requisite ten-year period for discharge under NRS 106.240. (*Id.*). Last,

1  Defendants contend that the ten-year period should be tolled by Plaintiffs' lawsuits preventing
2  Nationstar and U.S. Bank from timely foreclosing. (*Id.* 8:2–9:2).

3  **A. Discharge of the Mortgage**

4  When addressing Plaintiffs' request for a temporary restraining order, the Court denied
5  relief upon finding that Plaintiffs failed to show a likelihood of success on their claims. *See*
6  *Valin v. Nationstar Mortg., LLC*, No. 2:19-cv-01785-GM-NDJA, 2019 WL 5697171, at *4 (D.
7  Nev. Nov. 4, 2019). Crucial to the Court's finding were the recorded Rescissions' declarations
8  retracting the First and Second Notices of Default on the Property, thereby decelerating the
9  Mortgage and making the loan once again "wholly due" in 2034 as stated in the Mortgage's
10 terms (rather than 2019 as argued by Plaintiffs). *Id.* Because neither the First nor Second
11 Notices of Default remained in force for ten years or more before the Rescissions, the Court
12 found discharge of the Mortgage under NRS 106.240 unlikely. *Id.*

13 Since the Court's Order denying Plaintiffs' request for a temporary restraining order, the
14 Nevada Supreme Court has not issued a published decision resolving these issues surrounding
15 NRS 106.240. But decisions from this District—as well as recent unpublished opinions by
16 Nevada state appellate courts—reinforce the conclusion that Plaintiffs' Amended Complaint
17 does not plausibly state claims for quiet title, declaratory relief, or injunctive relief based on a
18 discharge of the Mortgage under NRS 106.240. *Glass v. Select Portfolio Servicing, Inc.*, No.
19 78325, 2020 WL 3604042, at *1 (Nev. July 1, 2020);[2] *cf. Johnston v. U.S. Bank Nat'l Ass'n as*

---

[2] The Nevada supreme court issued its decision in *Glass v. Select Portfolio Servicing, Inc.* after the parties completed briefing on Defendants' pending Motion to Dismiss. Defendants accordingly filed a Motion for Leave to File Supplemental Authority, (ECF No. 39), to notify the Court of the new, non-binding decision. Plaintiffs oppose the Court's reliance on *Glass* by noting that the appellant there intends to file a petition for rehearing or review *en banc*. So Plaintiffs ask that the Court not render a decision on Defendants' Motion until the Nevada supreme court determines rehearing. (Resp. 2:5–8, ECF No. 40). But the Court declines to further delay this case, and will grant Defendants' Motion for Leave. Plaintiffs do not outline what a rehearing petition would cover in *Glass*, and it is speculative that the Nevada supreme court would wholly reverse *Glass* if rehearing occurred to the point that the ultimate holdings in both this Court's prior Order and *Glass* would be undermined. Additionally, Plaintiffs did not file a motion to stay this case pending a decision on rehearing in *Glass*. The Court thus finds that delaying resolution of Defendants' ripe, fully briefed Motion is inappropriate.

*Tr. for TBW Mortg.-Backed Tr. Series 2006-5, TBW Mortg. Pass-Through Certificates, Series 2006-5*, No. 78278-COA, 2020 WL 3832873, at *2 (Nev. App. July 7, 2020).  Indeed, in *Glass v. Select Portfolio Servicing, Inc.*, the Nevada supreme court held that recording a rescission of a notice of default acts to retract the notice of default's acceleration of the underlying loan. *Glass*, 2020 WL 3604042, at *1.  Essential to the holding in that case was the recorded rescission's language stating that it "does hereby rescind, cancel and withdraw the Notice of Default and Election to Sell." *Id.* ("[B]y explicitly cancelling this Notice of Default, SPS effectively cancelled the acceleration.").  The rescission accordingly "restored the parties to the prior status they held before the Notice of Default was filed." *Id.*

Here, the language of the First Rescission contains the same declarations essential to retraction of acceleration in *Glass*:

> "[Recontrust], acting as an agent for the Beneficiary does hereby rescind, cancel and withdraw the Notice of Default and Election to Sell . . . however, that this rescission shall not be construed as waiving, curing, extending to, or affecting any default, either past, present or future, under such Deed of Trust, or as impairing any right or remedy thereunder, and it is and shall be deemed to be, only an election without prejudice not to cause a sale to be made pursuant to such Notice of Default and Election to Sell, and it shall not in any way alter or change any of the rights remedies or privileges secured to Beneficiary and/or Trustee under such Deed of Trust, nor modify, nor alter in any respect any of the terms, covenants, conditions or obligations therein contained.

(First Rescission, Ex. C to Resp, ECF No. 11-3).  Defendants later accelerated the Mortgage again through the Second Notice of Default, but the Second Rescission largely mirrors the First in terms of deceleration language, while adding more: "said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given." (Second Rescission, Ex. H to Resp., ECF No. 11-8); (Second Rescission, Ex. I to Resp., ECF No. 11-9). The Rescissions thus withdrew acceleration of the Mortgage caused by the First and Second

Notices of Default.  Granted, the Mortgage became re-accelerated when Defendants filed the Third Notice of Default on January 9, 2017. (Third Notice of Default, Ex. J to Resp., ECF No. 11-10).  But because the First and Second Rescissions were recorded within ten years of the First and Second Notices of Default, and because the Third Notice of Default was recorded within ten years of Plaintiffs' suit, NRS 106.240 does not apply to discharge the Mortgage here.  *See Bank of Am., N.A. v. Estrella II Homeowners Ass'n*, No. 2:16-cv-02835-APG-DJA, 2020 WL 4194004, at *3 (D. Nev. July 21, 2020) ("Because the trustee canceled the acceleration through the rescission of the notice of default, the deed of trust has not been extinguished by operation of § 106.240.").  As a result, Plaintiffs' allegations do not plausibly state claims for relief under NRS 106.240, warranting dismissal.  Furthermore, since the Court dismisses Plaintiffs' claims, the Court also dismisses as moot Plaintiff's Objection/Appeal to Magistrate Judge Albregts's Order staying discovery.

**B. Leave to Amend**

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend.  The Court will "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

The Court will not provide Plaintiffs leave to amend.  The Amended Complaint's claims arise solely from allegations about the Mortgage's discharge under NRS 106.240 due to the First Notice of Default recorded on September 8, 2009. (FAC ¶¶ 25–42).  As explained above, Plaintiffs' claims cannot succeed under those alleged facts.  Because Plaintiffs do not seek leave to amend or explain what additional facts not currently alleged might render the claims

plausible, the Court has no basis to presume that additional factual allegations concerning the recorded Rescissions or Notices of Default could cure the deficiencies with Plaintiffs' claims.

### IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 10), is **GRANTED**.  The Court **DISMISSES with prejudice** the claims in Plaintiffs' Amended Complaint.

**IT IS FURTHER ORDERED** that Plaintiffs' Objection/Appeal, (ECF No. 36), concerning Magistrate Judge Daniel J. Albregts's Order, (ECF No. 35), granting a stay of discovery is **DISMISSED as moot**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Reply in Support of Objection/Appeal, (ECF No. 38), is **DISMISSED as moot**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Supplemental Authority, (ECF No. 39), is **GRANTED**.

The Clerk of Court shall close the case and enter judgment accordingly.

**DATED** this __11__ day of August, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court